IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TECH-NI-FOLD LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 14 C 5737 |
| | ) | |
| F.P. ROSBACK COMPANY, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tech-ni-Fold Ltd. filed suit against Defendant F. P. Rosback Company, alleging that Rosback infringed its patented device which creases paper and card stock before it is folded. Specifically, Tech-ni-Fold contends that Rosback infringed upon United States Patent No. 6,572,519 ("the '519 Patent"). Tech-ni-Fold's product entitled the "Tri-Creaser" embodies the invention claimed in the '519 Patent. Tech-ni-Fold argues that Rosback's products, the "Truescore-Pro" and the "Truescore-Pro Quad," both directly infringe five claims of the '519 Patent either literally or through application of the doctrine of equivalents. The parties submitted cross motions for summary judgment regarding Tech-ni-Fold's infringement claim and simultaneously presented five claim terms for construction. The Court held a Markman hearing on February 20, 2015. (Dkt. No. 67.) For the reasons set forth below, Rosback's motion for summary judgment of non-infringement (Dkt. No. 35) is granted and Tech-ni-Fold's motion for partial summary judgment of infringement (Dkt. No. 28) is denied. The claim terms are construed as set forth below.

## BACKGROUND

The following undisputed facts are culled from the parties Rule 56 statements and the joint appendix. All facts are undisputed unless expressly noted.

Tech-ni-Fold is a United Kingdom company that owns the '519 Patent by written assignment. (Tech 56.1 ¶¶ 1, 4.) Rosback is a Michigan corporation that sells two products entitled the Truescore-Pro and Truescore-Pro Quad. (*Id.* at ¶¶ 2, 10.) Tech-ni-Fold claims that the Truescore-Pro and Truescore-Pro Quad infringe the '519 Patent. The accused products are devices designed for rotary creasing paper and card stock. (*Id.* at ¶ 21.) When assembled, Rosback's products utilize a scoring disc affixed to an upper head of the device. (*Id.* at ¶¶ 23-24.) Rosback produces three scoring discs of different widths for use in the accused devices depending on the paper stock to be creased. (*Id.* at ¶ 25.) The lower head contains grooves of three different widths. (*Id.* at ¶ 32.) The accused devices work by inserting material, such as card stock, between the upper and lower head until the scoring disc stretches the stock into a groove on the lower head, which forms a crease. (*Id.* at ¶ 37.)

The creasing process, however, can tear the stock, and so Graham Harris, the founder of Tech-ni-Fold, developed a device to combat the problem of cracking or tearing stock when folded. (*Id.* at ¶¶ 38, 46-47.) After an examiner initially rejected the original seven claims of the '519 Patent application on September 13, 2002, (Rosback 56.1 ¶ 20), the United States Patent and Trademark Office ("USPTO") issued Harris the '519 Patent on June 3, 2003. (Dkt. No. 40, Joint Appendix 001.) The '519 Patent claims a device for creasing paper or card stock before it is folded. (*Id.*; Rosback 56.1 ¶ 13.) The device uses drum-shaped components to hold rubber O-rings that gently crease the paper to avoid tearing. (JA 001) An alleged benefit of the device is that it can be "quickly and easily set up to form creases of various widths and depths." (*Id.*)

The only independent claim of the '519 Patent, (Rosback 56.1 ¶ 16), claim 1, recites several components needed to form the "device for creasing paper": (1) "a first drum with an axis and having an outer surface comprising around circumferences of the surface one or more first grooves of a first width and a first depth;" (2) "a second drum with an axis and having an outer surface comprising around circumferences of the surface, one or more receiving grooves of a width greater than the first width;" (3) "one or more first resilient creasing rings for location in the grooves of the first drum to project radially outwards from the outer surface of the first drum to a first height;" (4) "such that, when the first and second drums are located adjacent to one another, with their axes parallel, first resilient creasing rings projecting from the first drum can lie within the receiving grooves of the second drum to form creases in a sheet of paper fed between the first and second drums." (JA at 003-4.)

Claim 3 recites "[a] device according to claim 1, wherein the first drum further comprises one or more narrow grooves of a second width less than the first width, the device further comprising second resilient creasing rings narrower than the first resilient creasing rings for location in the narrow grooves of the first drum to project radially outwards from the outer surface of the first drum." (*Id.* at 004.)

Claim 5 recites "[a] device according to any of claims 2 to 4, wherein for each groove in the first drum, the second drum has a receiving groove in the first drum, the second drum has a receiving groove of greater width at a corresponding axial position." (*Id.*) Claim 6 further recites "[a] device according to claim 5, wherein the second drum further comprises means for positioning the second drum relative to the first drum in the axial direction." (*Id.*)

The last of Tech-ni-Fold's asserted claims[1], claim 7 of the '519 Patent recites "[a] device according to claim 1, wherein each resilient creasing ring has a cross-section and the cross-section of one or more of the resilient creasing rings is thicker in a direction perpendicular to the surface of the drum than in a direction parallel to the surface of the drum." (*Id.*)

## DISCUSSION

The parties have filed cross-motions for summary judgment: Tech-ni-Fold seeks a ruling that Rosback's accused devices infringe upon claims 1, 3, and 5-7 of the '519 Patent as a matter of law; and Rosback seeks a conclusion of non-infringement. A determination of infringement involves a two-step process. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Yufa v. Lockheed Martin Corp.*, 575 F. App'x 881, 885-86 (Fed. Cir. 2014) (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). Because "[i]t is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied" to the device to determine infringement, the Court construes the disputed claim terms before embarking on an infringement analysis. *See SRT Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc).

## I.    Claim Construction

### A.    Legal Standard

The construction of a claim is a legal determination made by the Court that resolves disputed meanings in a patent to clarify and explain what the claim covers. *See Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995)). The terms of a claim are generally given the ordinary and customary meaning that the terms would have to a person of ordinary

---

[1] Tech-ni-Fold  asserts claims 1, 3, and 5-7 of the '519 Patent against Rosback.

skill in the art at the time of the filing date of the patent application and are "read in the context of the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Exceptions to this general rule arise "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Further, "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside . . . the patent." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1283 (Fed. Cir. 2012).

When interpreting a claim, the Court initially looks to intrinsic evidence: the claim language itself, the patent specification, and the prosecution history. *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record"). While the claim language is the starting point for construction because the "ordinary and customary" meaning of the claim may be readily apparent by the words themselves, *see Phillips*, 415 F.3d at 1314, courts are often required to proceed beyond the bare language of the claims and examine the patent specification. *See id.* at 1314-15. The specification itself tends to be dispositive of the dispute; "it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). The Court also inspects the patent's prosecution history when construing claims; while it often lacks the clarity of, and is less useful than, the specification, it may illustrate how the inventor understood the invention and reveal limitations to its scope. *See Phillips*, 415 F.3d at 1317. The Court may also consult extrinsic evidence including expert testimony, dictionaries, and learned treatises. *See id.* Although extrinsic evidence is less significant and helpful than intrinsic

evidence, "technical treatises and dictionaries . . . are worthy of special note." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citation omitted). Courts are free to rely on dictionary definitions when construing claims "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics*, 90 F.3d at 1584 n.6.

### B.    Construction of the Disputed Claim Terms

As a threshold matter, the Court notes that neither Tech-ni-Fold nor Rosback identified the person of ordinary skill in the art in their briefs. Because neither party has submitted any evidence that a person of ordinary skill in the art would understand any of the disputed terms to have special, technical meanings in the relevant field, the Court makes no conclusions regarding the level of ordinary skill in the art and will apply the widely accepted meanings of the disputed terms in relation to the specification and prosecution history. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011) ("In this case, neither party contends that 'body' has a special, technical meaning in the field of art, and thus claim construction requires 'little more than the application of the widely accepted meaning of commonly understood words.' ") (quoting *Phillips*, 415 F.3d at 1314).

Here, the parties submitted five terms and phrases that they deemed the Court should construe.[2] Those terms and phrases are:

| Term / Phrase | Tech-ni-Fold's Proposed Construction | Rosback's Proposed Construction |
|---|---|---|
| "Drum" | A machine, device, or part having a cylindrical portion | A cylindrical object, wherein a cylindrical object is an object that has ends constituting fixed planar closed curves and |

---

[2] The parties originally planned to submit the term "means for positioning the second drum relative to the first drum in the axial direction" to the Court for construction, but both parties agree that this entails a screw. (Rosback 56.1 ¶¶ 26-28.)

| | | lines on the surface parallel with the axis intersecting those closed curves |
|---|---|---|
| "[F]or each groove (8, 10, 12) in the first drum (2), the second drum (4) has a receiving groove (14, 16, 18) of greater width at a corresponding axial position" | For each groove in the first drum, the second drum has a receiving groove of greater width at a corresponding axial position | For each groove in the creasing drum there is a corresponding wider groove in the receiving drum that is automatically aligned with the groove in the creasing drum |
| "Groove" | A channel | A channel in a surface |
| "Resilient" | Sufficiently deformable when compressed, capable of recovering its original shape after deformation, and having a hardness that is more gentle to the material to be creased than metal; i.e., not rigid | Capable of recovering original shape after deformation |
| "Ring" | A body having an opening and a circular outer periphery | A continuous circular band having a round cross section |

### 1.      The "Drum" Limitation

Tech-ni-Fold contends that a "drum" means any object that contains a cylindrical portion while Rosback maintains that a "drum" is a cylindrical object with, in essence, a consistent cross section. Within the context of the '519 Patent, the "drum" limitation means a cylindrical object, not merely a machine or part that has a cylindrical portion. The parties' dispute essentially concerns the amount or proportion of a device that must be cylindrical in order for the device to be considered a "drum." Because the plain meaning of "drum" supports the narrower definition of a cylindrical object, instead of an object that has a cylindrical portion, the Court defines drum to mean a cylindrical object. The remainder of Rosback's proposed construction is rejected.

The term "drum" should be given its plain and ordinary meaning. The general rule is that the terms of a claim are given the ordinary and customary meaning that the terms would have to a person of ordinary skill in the art and "read in the context of the entire patent." *Phillips*, 415

F.3d at 1312-13. Here, neither party suggests that "drum" maintains a technical definition within the relevant field. Because there is no special meaning, "drum" should "involve[] little more than the application of the widely accepted meaning of commonly understood words." *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1367 (Fed. Cir. 2015) (quoting *Phillips*, 415 F.3d at 1314). The parties agree that the dictionary defines "drum" as "a cylindrical machine or mechanical device or part." (Tech 56.1 ¶ 44; Rosback 56.1 Resp. ¶ 44.) Tech-ni-Fold seeks to broaden that plain definition by construing the term to mean "a machine, device, or part having a cylindrical *portion*." (Dkt. No. 30 at 9) (emphasis added). Tech-ni-Fold's proposed construction, however, impermissibly expands the scope of the term. Under Tech-ni-Fold's construction, as Rosback points out, a rectangular block with a cylindrical bore drilled through it would qualify as a "drum." As another crude example, the Court's gavel would qualify as a drum. Such a construction is overly broad and therefore rejected.

The Court also rejects the remainder of Rosback's proposed construction because even the figure in the '519 Patent itself would not qualify as a "drum" under its proposal. Rosback's proposed construction, in its entirety, is a more fitting definition for a "cylinder" than for a "drum."[3] Because a "drum" need only be "cylindrical," it need not be a perfect cylinder. In fact, under Rosback's proposed construction, the drawing disclosed in the '519 Patent itself would not qualify as a "drum" because lines drawn out parallel to the surface from within the grooves on the surface of the device would not intersect the closed curves of the ends of the cylinder:

---

[3] The dictionary defines a "cylinder" as "a surface or solid bounded by two parallel planes and generated by a straight line moving parallel to the given planes and tracing a curve bounded by the planes and lying in a plane perpendicular or oblique to the given planes."



(JA 002; '519 Patent Fig. 1.) Because the preferred embodiment of the '519 Patent, as demonstrated above, would not qualify as a "drum" under Rosback's expanded construction, the Court rejects the additional limitations beyond "a cylindrical object." *See Inline Plastics Corp. v. EasyPak, LLC*, No. 2014-1305, 2015 WL 5058248, at *3 (Fed. Cir. Aug. 27, 2015) ("the patentee is entitled to claim scope commensurate with the invention that is described in the specification"). The Court therefore construes "drum" to mean a cylindrical object.

### 2. The "[F]or each groove (8, 10, 12) in the first drum (2), the second drum (4) has a receiving groove (14, 16, 18) of greater width at a corresponding axial position" Limitation

Claim 5 of the '519 Patent recites "[a] device according to any of claims 2 to 4, wherein for each groove (8,10,12) in the first drum (2), the second drum (4) has a receiving groove (14, 16, 18) of greater width at a corresponding axial position." ('519 Patent at 4:5-8.) The extent of the parties' dispute on constructing this term is limited to whether or not this limitation requires the corresponding receiving grooves to automatically align with the creasing grooves. Rosback argues it does; while Tech-ni-Fold contends that no construction is necessary since the claim only requires a receiving groove "available to work with" a creasing groove. (Dkt. No. 47 at 14.) Because the intrinsic evidence supports Rosback's proposed construction, the Court construes the term to require automatic alignment among the creasing and receiving grooves.

The Court construes this claim to require automatic alignment amongst the creasing and receiving grooves in the context of the entire patent. *See FenF, LLC v. SmartThingz, Inc.*, 601 F.

App'x 950, 952 (Fed. Cir. 2015). The disputed term rests in claim 5 of the '519 Patent, which in turn depends on claims 2 through 4. Claims 2 through 4 recite claims for creasing devices with at least two grooves on each creasing and receiving drum. In light of this context, "corresponding axial position" becomes significant because the devices claimed in claims 2 through 4 have multiple groove locations and creasing width options on each drum. Accepting Tech-ni-Fold's position that the limitation only requires a "mate" for every groove in the first drum, rather than the mate to line up with the creasing groove automatically, would make the phrase "corresponding axial position" superfluous. Reading out this phrase would impermissibly broaden the claim. *See Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1154 (Fed. Cir. 2015) ("Claims are interpreted with an eye toward giving effect to all terms in the claim.") (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006)).

The specification further supports this construction. Despite Tech-ni-Fold's cries to the contrary, the '519 Patent places an emphasis on speed of switching between creases of different widths. *See* JA 001, '519 Patent Abstract ("The invention allows the device to be quickly and easily set up to form creases of various widths and depths"). When specifically discussing alternating between grooves, the specification discloses that "[b]y using different O-rings or inserts and/or different grooves on the male component, the device can quickly and easily be adapted to form different widths and depths of creases in different thicknesses of paper. The grooves in the female component are automatically aligned with the corresponding O-rings or inserts in the male component." ('519 Patent at 1:56-62.) Because speed of use is a critical aspect of the invention, which the specification describes generally both in the abstract and before describing any preferred embodiments, construing the claim to require automatic alignment between the grooves, which would necessarily accelerate shifting between crease sizes, does not

import a limitation from the specification into the claims. *See Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) (explaining that construing courts should not import limitation from the specification unless the patentee intended for the claim and the embodiments disclosed in the specification to be coextensive). Rather, requiring automatic alignment reflects the purpose underlying the invention. *See Retractable Techs.*, 653 F.3d at 1305 ("It is axiomatic that the claim construction process entails more than viewing the claim language in isolation. Claim language must always be read in view of the written description[.]"). Moreover, when distinguishing the patented device from prior art, the '519 Patent makes it clear that manual alignment can be an issue. *See* '519 Patent at 1:25-28 ("Obtaining the correct spacing between the two lower drums and aligning it correctly with the disc is critical to the success of the operation and is a skilled operation."). The Court accordingly construes the term to mean automatic alignment. *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000) (claim interpretation that aligns with the purpose of the invention is likely to be correct) (citation omitted).

### 3. The "Groove" Limitation

The parties dispute whether a "groove" is a channel (Tech-ni-Fold's proposed construction) or a channel in a surface (Rosback's proposed construction). Within the context of the '519 Patent, a "groove" is a channel in a surface. Both the intrinsic and extrinsic evidence support this construction.

Tech-ni-Fold contends that a "groove" is "merely a void that extends around the circumference of the drum that has a width and depth—i.e, a 'channel.' " (Dkt. No. 30 at 8.) Both the claim language itself and the specification belie Tech-ni-Fold's position. Claim 1, the only independent claim of the '519 Patent, explicitly recites that the claimed device utilizes a

drum "having an outer surface comprising around circumferences of the surface one or more first grooves of a first width and a first depth[.]" ('519 Patent at 2:57-60.) The claim language itself therefore demonstrates that a "groove" exists in a surface and Tech-ni-Fold's arguments to the contrary, relying solely on extrinsic evidence in the form of attorney affidavit, are unavailing. *See Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.")(citation omitted). The specification similarly supports such a construction. *See Global Traffic Techs. LLC v. Morgan*, Nos. 2014-1537, 2014-1566, 2015 WL 3513416, at *4 (Fed. Cir. June 4, 2015) ("[T]he specification is always highly relevant to the claim construction analysis.") (citation and internal quotation marks omitted). Here, when describing the figures in the '519 Patent, the specification states that "the surface of the male [drum] has grooves around its circumference." ('519 Patent at 2:10-11.) This is consistent with the claim language and establishes that a "groove" exists in a surface. The specification provides further support for construing "groove" as a channel in a surface, rather than just a void, by differentiating a "gap" from a "groove" when distinguishing the prior art: "Existing methods of creasing involve . . . two lower drums [] mounted coaxially and [] spaced apart a short distance to create a narrow gap between them." ('519 Patent at 1:13-19.) *See, e.g.*, *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) (the use of different terms in claims "connotes different meanings"). Based on the claim language and specification, the Court construes "groove" to mean a channel in a surface.

Because the Court relies on the intrinsic evidence in the record to construe "groove," it need not resort to extrinsic evidence. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013); *see also Vitronics*, 90 F.3d at 1583 (in

situations where analyzing the intrinsic evidence resolves ambiguity in a disputed claim term, "it is improper to rely on extrinsic evidence") (citation omitted). Nevertheless, the dictionary definition for "groove" also supports the Court's construction. *See Starhome GmbH v. AT&T Mobility, LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014) (courts may rely on the dictionary meaning of a term provided that the meaning does not contradict any definition found in the patent or the prosecution history). The dictionary defines "groove" as "a long, narrow cut or low area in a surface." (Tech 56.1 Ex. E.) This definition does not contradict anything found in the patent or prosecution history and accordingly provides additional support for construing "groove" to be a channel in a surface.

### 4. The "Resilient" Limitation

The Court ascribes the plain and ordinary meaning to "resilient" in regards to the '519 Patent. *See Shire*, 787 F.3d at 1367 (in cases where the ordinary meaning of claim language is readily apparent even to lay judges, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words.") (quoting *Phillips*, 415 F.3d at 1314). "Resilient" is a commonly used word that the dictionary defines as able to recoil or spring back into shape after bending, stretching, or being compressed. *See Starhome*, 743 F.3d at 856 (courts may rely on dictionary definitions for disputed claim terms). Rosback's proposed construction, "capable of recovering original shape after deformation," gives "resilient" its plain and ordinary meaning while Tech-ni-Fold's, "[s]ufficiently deformable when compressed, capable of recovering its original shape after deformation, and having a hardness that is more gentle to the material to be creased than metal; i.e., not rigid," adds unhelpful and improper limitations not supported by the claim language, specification, or prosecution history.

Tech-ni-Fold argues that its narrowed definition applies because the specification makes clear that "metal" is not "resilient." "Claim terms are properly construed to include limitations not otherwise inherent in the term only 'when a patentee sets out a definition and acts as his own lexicographer,' " or 'when the patentee disavows the full scope of a claim term either in the specification or during prosecution.' " *Woods*, 692 F.3d at 1283 (quoting *Thorner*, 669 F.3d at 1365). "To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365 (citation and internal quotation marks omitted). It is insufficient for the patentee to disclose a single embodiment or use a word in the same manner in all embodiments in the specification; the patentee must "clearly express an intent" to redefine the term. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008). Similarly, disavowal of claim scope occurs only "[w]here the specification makes clear that the invention does not include a particular feature." *Thorner*, 669 F.3d at 1366. Where the patentee does so, "that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Id.* (citation omitted). Disavowal requires "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

Neither exception to general claim construction rules applies in this instance. Although the specification disparages the use of metal discs in creasing devices because they are capable of damaging the paper to be creased, *see* '519 Patent 1:28-29, 63-66, "[m]ere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal." *Thorner*, 669 F.3d at 1366; *see also Epistar Corp. v. Int'l Trade*

*Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009) (holding that even a direct criticism of a particular technique did not rise to the level of clear disavowal). Nor is there evidence of the patentee expressly redefining "resilient" to exclude all metals in the specification. *Cf. 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2004) (patentee acted as own lexicographer when the specification states: " 'Multiple embossed' means two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing."; *Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) (patentee limited to explicit examples of solubilizers where specification stated that "[t]he solubilizers suitable according to the invention *are defined below*."). Here, the patentee certainly criticized the use of metal discs when creasing paper, but never clearly, expressly disavowed its use. Nor did the patentee act as his own lexicographer in redefining "resilient." Accordingly, the Court declines to construe "resilient" consistently with Tech-ni-Fold's proposal.[4] Instead, the Court uses Rosback's proposed construction as it is consistent with the word's plain and ordinary meaning.

### 5.        The "Ring" Limitation

The final disputed term between the parties is the "ring" limitation. Claim 1 recites a device for creasing paper that comprises "one or more first resilient creasing rings for location in the grooves" of the creasing drum such that when paper is fed between the creasing and receiving drums, the "ring" gently presses the paper into the receiving drum's groove, thereby forming the desired crease. Tech-ni-Fold argues that a "ring" is "a body having an opening and a circular outer periphery" while Rosback contends that a "ring" constitutes "a continuous circular band having a round cross section." The Court rejects both proposed constructions because (1)

---

[4] The prosecution history of the '519 Patent does not mandate a different result. Similarly to the specification, the International Preliminary Examination Report criticized the prior art's use of "hard circumferential projections" but did not disavow the use of metal universally in creasing devices. (JA 043.)

Tech-ni-Fold's is substantially overbroad and (2) Rosback's includes additional limitations inconsistent with the claim language and specification. The Court concludes that the plain and ordinary meaning of "ring" as "a circular band" applies within the context of the '519 Patent. Both parties agree that the dictionary defines "ring" as "a circular band." (Dkt. Nos. 43 at 10 and 52 at 3.) Because "ring" is a commonly used word and its dictionary definition does not contradict any definition found in the patent or prosecution history, *see Starhome*, 743 F.3d at 856, further construction is unnecessary.

Tech-ni-Fold's proposed construction attempts to impermissibly broaden the meaning of "ring" without support within the patent. As Rosback notes, "a body having an opening and a circular outer periphery" would encompass a bowling ball. Moreover, the specification itself betrays Tech-ni-Fold's current position. When differentiating its device from prior art, the '519 Patent states that prior art utilized "metal discs" to crease whereas the patented invention uses "rings." ('519 Patent at 1:15-17, 28-29, 44-45, 63-67.) Tech-ni-Fold's proposed construction would plainly include "discs," as a "disc affixed to [an] upper drum" would necessarily have both an opening and a circular outer periphery. (*Id.* at 1:15-17.) Yet the inventor explicitly recognized the difference between the patented device's use of "rings" and the prior art's use of "discs." *See, e.g.*, *Applied Med.*, 448 F.3d at 1333 n.3 (the use of different terms in claims "connotes different meanings"). Tech-ni-Fold argues that the '519 Patent's distinction between "rings" and "discs" was directed towards the material used in each; the '519 Patent teaches the use of hardened rubber rings while prior art used metal discs. Even if the patent examiner relied on this justification, "an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *See Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed.

16

Cir. 2013). Both the specification and prosecution history make it clear that the patentee meant different things when he said "ring" and "disc." Accordingly, the Court will not give "ring" Tech-ni-Fold's enlarged construction.

Additionally, Tech-ni-Fold's citation to the specification's teaching that "more flattened resilient insert[s] shaped like [] washer[s]" may be used does not expand the Court's construction. The '519 Patent claims "rings," not "inserts" or "washers" and ultimately, the claim language itself controls the scope of construction. *See Trebro*, 748 F.3d at 1166 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.")(citation omitted). The Court therefore rejects Tech-ni-Fold's attempt to broaden the meaning of "ring" without evidence that the patentee acted as its own lexicographer and gave "ring" a definition alternative to its plain and ordinary meaning.

The Court also rejects Rosback's proposed additional limitations because they are outside the plain and ordinary meaning of "ring" and unsupported by the intrinsic evidence. Rosback seeks to construe "ring" narrowly by arguing that a "ring" must be continuous and maintain a round cross section. Neither limitation is appropriate because the claim language does not confine "ring" as Rosback wishes to. Rosback points to the specification's consistent use of the term "o-ring" when summarizing the invention in an effort to support its position that "rings" must have a round cross-section. The Court notes that the '519 Patent encourages using "o-rings" throughout the specification. *See generally* '519 Patent at 1:43, 48, 50, 56, 61, 63. But the claims themselves do not limit their scope to "o-rings"; instead, the '519 Patent claims the use of broader "rings." Moreover, claim 7 explicitly contemplates and claims "rings" that have a cross-section "thicker in a direction perpendicular to the surface of the drum than in a direction parallel to the surface of the drum." ('519 Patent at 4:13-17.) A "ring" with a cross-section thicker along

one axis than another cannot simultaneously maintain a round cross-section. Accordingly, despite the specification's frequent use of the term "o-ring," the Court does not construe "ring" to require a round cross-section. *See Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1369-70 (Fed. Cir. 2014) ("A construing court's reliance on the specification must not go so far as to import limitations into claims from examples or embodiments appearing only in a patent's written description unless the specification makes clear that the patentee intends for the claims and the embodiments in the specification to be strictly coextensive.") (citation omitted). Similarly, Rosback's argument that a "ring" must be continuous is rejected because it is not supported by the intrinsic evidence and is unhelpful in the context of the word's plain and ordinary meaning. The Court instead concludes that a "ring" is a circular band.

## II. Infringement

### A. Legal Standard

"[F]or a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Terlep*, 418 F.3d at 1384; *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997) (because each limitation contained in a patent claim is material to defining the scope of the patented invention, a doctrine of equivalents analysis must be applied to individual claim limitations, not to the invention as a whole). Summary judgment on infringement or non-infringement is proper if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Yufa*, 575 F. App'x at 886 (citation omitted). The patent owner has the burden to prove infringement. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014).

**B.      Discussion**

The Court grants Rosback's motion for summary judgment of non-infringement and denies Tech-ni-Fold's motion for partial summary judgment of infringement because no reasonable jury could conclude that the accused devices utilize every limitation recited in claim 1 of the '519 Patent, the patent's only independent claim. *See Yufa*, 575 F. App'x at 886. Rosback's devices do not literally infringe claims 1, 3, and 5-7 of the '519 Patent, nor do they infringe under the doctrine of equivalents, because the accused devices do not have a "drum," "groove" in the creasing head[5], or "ring" when those terms, as properly construed above, are applied to the devices. *See Johnson & Johnson Assocs. Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (doctrine of equivalents extends the patentee's right to exclude beyond the literal scope of the claims). Because no reasonable jury could find that either the Truescore-Pro or Truescore-Pro Quad have a "drum," "groove" in the creasing head, or "ring," the Court grants Rosback's motion for summary judgment.

Claim 1 is the only independent claim of the '519 Patent. The claim recites a creasing device that comprises of (1) "a first drum with an axis and having an outer surface comprising around circumferences of the surface one or more first grooves of a first width and a first depth;" (2) "a second drum with an axis and having an outer surface comprising around circumferences of the surface, one or more receiving grooves of a width greater than the first width;" (3) "one or more first resilient creasing rings for location in the grooves of the first drum to project radially outwards from the outer surface of the first drum to a first height;" (4) "such that, when the first and second drums are located adjacent to one another, with their axes parallel, first resilient creasing rings projecting from the first drum can lie within the receiving grooves of the second

_____

[5] Rosback concedes that the accused devices' receiving heads have grooves in their surfaces. This is inconsequential because claim 1 of the '519 Patent requires both the first and second "drums" to have "grooves." ('519 Patent at 2:58-64.)

drum to form creases in a sheet of paper fed between the first and second drums." ('519 Patent at 2:57-3:6.) In order for Rosback's accused devices to infringe claim 1, they necessarily must comprise a "drum," "groove" in the creasing "drum," and "ring." *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1330 (Fed. Cir. 2013). The accused devices have none of these three limitations as properly construed by the Court, either literally or via an equivalency analysis. Accordingly, Rosback does not infringe claim 1 of the '519 Patent. Because the accused devices do not infringe upon the '519 Patent's only independent claim, it necessarily follows that Tech-ni-Fold's other asserted claims, dependent claims 3, 5, 6, and 7, are not infringed as well. *See Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316 n.1 (Fed. Cir. 2006) ("Since we conclude that [independent claim] is not infringed, it necessarily follows in this case that the dependent claims are also not infringed.").

### 1. "Drum"

"Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.' " *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000) (quoting *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). Here, claim 1 requires the presence of a "drum," which the Court has construed to mean "a cylindrical object." Because the accused devices do not utilize "drums," they do not infringe claim 1 of the '519 Patent.

No reasonable jury could conclude that the accused devices' heads are "cylindrical objects." While the Court's construction of "drum" accepts that the accused object need not be a perfect cylinder, as the '519 Patent's preferred embodiment itself is not a perfect cylinder, a "drum" still must be cylindrical. Rosback's heads, composed of multiple pieces with large deviations in surface height between the numerous surfaces, are not cylindrical:



(Dkt. No. 43 at 17.) Instead, they are a compilation of separate, discrete discs that combine to form a head with varying surface heights, unlike the singular, cylindrical unit contemplated by the '519 Patent. Because the accused devices do not use "cylindrical machine[s] . . . that hav[e] the form or properties of a cylinder," no reasonable jury could find that they have "drums" under the Court's construction of the term. (Dkt. No. 47 at 8.)

Nor is Tech-ni-Fold's infringement argument regarding "drums" saved by the doctrine of equivalents. "The 'essential inquiry' in any determination under the equivalents doctrine is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.' " *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) (alteration in original) (quoting *Warner-Jenkinson*, 520 U.S. at 40). Tech-ni-Fold argues that the accused devices utilize "drums" because prior art used creasing heads that are similar to Rosback's devices. Inherent in Tech-ni-Fold's argument is that the prior art to the '519 Patent used devices that are comparable to the devices that Tech-ni-Fold accuses of infringing upon the '519 Patent, and "one of the limitations on the doctrine of equivalents is that the claims cannot be accorded a construction that would

encompass prior art." *Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 937 n.5 (Fed. Cir. 1983). Accordingly, the Court concludes that the accused devices do not have "drums," either literally or under the doctrine of equivalents.

### 2. "Groove"

Nor does the Truescore-Pro or Truescore-Pro Quad have "grooves" along their respective surfaces. Independent claim 1 requires the presence of a "groove" "around circumferences of the surface" of both the creasing and receiving "drums." ('519 Patent at 2:58-64.) Based on this plain claim language and the specification, which teaches that "the surface of the [creasing] component has grooves around its circumference," (*Id.* at 2:10-11), the Court construed "groove" to be a "channel in a surface." The accused devices do not have channels in any of the surfaces of the pieces that make up the creasing head.

Rosback's devices, when partially assembled and without a creasing disc installed, appear as below:



(Dkt. No. 36 at 2.) The arrow in the depiction above points to what Tech-ni-Fold deems the "groove" in the creasing head. No reasonable jury could agree because the gap that Tech-ni-Fold points to is not a "channel in a surface." Instead, it is an absolute void between two support plates, something that the patentee explicitly recognized as distinct from a groove in the '519 Patent. *See* '519 Patent at 1:17-19, 49-50 (identifying that the prior art creased paper using a

"gap" between two lower drums while the patented device uses "grooves"). Because there is no channel in any surface in the accused devices, the devices do not literally infringe claim 1 of the '519 Patent.

The doctrine of equivalents does not save Tech-ni-Fold's infringement contention. Tech-ni-Fold argues that the space between the accused devices' "support discs" provides the same function in substantially the same way and achieves the same result as the "grooves" in the patented device. *See Cambrian Science Corp. v. Cox Commc'ns, Inc.*, No. 2014-1686, 2015 WL 3938387, at *4 (Fed. Cir. June 29, 2015) (proper inquiry is whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention"). The doctrine of equivalents provides no support for Tech-ni-Fold here because the '519 Patent disclosed "gaps" in the prior art as different from "grooves" but did not correspondingly claim "gaps." Accordingly, the patentee disclaimed a "gap" as an equivalent. *See SanDisk Corp. v. Kingston Tech. Co., Inc.*, 695 F.3d 1348, 1363 (Fed. Cir. 2012) ("A patentee . . . can disclaim an equivalent by disclosing it in the specification . . . [W]hen a patent drafter discloses but declines to claim subject matter, . . . this action dedicates that unclaimed subject matter to the public.") (quoting *Johnson & Johnson Assocs.*, 285 F.3d at 1054).

### 3. "Ring"

Similarly, Rosback's devices do not use "rings" as that term is properly construed by the Court. The Court construed "ring" as a circular band. Rosback's creasing apparatuses, under this construction, are not "rings" because they are not bands. Instead, they are flat discs with central areas of material and an opening far smaller in ratio than a "band" requires, something the patentee explicitly distinguished from in the specification of the '519 Patent. *See* '519 Patent at 1:10-17, 28-29, 63-65 ("Existing methods of creasing involve feeding the paper to be creased

between an upper drum and a pair of lower drums. A metal disc is affixed to the upper drum and projects a short distance radially outwards around the circumference of the upper drum. . . . The rubber O-rings or inserts treat the paper more gently and are less likely to tear it than the metal discs of the prior art."). When the patentee claimed "rings," he therefore recognized the difference between the prior art's use of "discs" and the patented devices' use of "rings." *See, e.g.*, *Applied Med.*, 448 F.3d at 1333 n.3 (Fed. Cir. 2006) (the use of different terms in claims "connotes different meanings"). The accused devices do not literally infringe claim 1's limitation of "rings."

Nor does Tech-ni-Fold find solace in the doctrine of equivalents. Tech-ni-Fold argues that the specification and prosecution history indicate that the patentee intended to claim "similar inserts" to O-rings in the '519 Patent. Tech-ni-Fold points to the specification's teaching that "O-rings of round cross-section may not be suitable for the narrowest grooves because the grooves would have to be extremely shallow for the O-ring to project above the surface. Instead, a more flattened resilient insert shaped like a washer may be used." ('519 Patent at 2:35-39.) The problem with Tech-ni-Fold's position is that neither claim 1 nor any of its dependent claims claimed anything other than a "ring." The claims never seek to include "inserts" or "washers," and Tech-ni-Fold's argument that the patentee meant to include "washers" or discs in its claim language is unavailing. *See Johnson & Johnson Assocs.*, 285 F.3d at 1053-54 (holding that patentee's subjective intent is irrelevant to determining whether unclaimed subject matter has been disclosed and therefore dedicated to the public). Here, the patentee disclosed that washer-shaped inserts could effectively be used in the patented invention. Yet he did not claim that same scope. The Court rejects Tech-ni-Fold's attempt to broaden that claim scope now. *See id.* at 1054 ("a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and

then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents. 'Such a result would merely encourage a patent applicant to present a broad disclosure in the specification of the application and file narrow claims, avoiding examination of broader claims that the applicant could have filed consistent with the specification.' ") (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1107 (Fed. Cir. 1996)). The Court therefore concludes that the accused devices' use of discs does not literally infringe claim 1 nor is it the equivalent of the '519 Patent's limitation of "rings." *See Johnson & Johnson Assocs.*, 285 F.3d at 1055 (where patent specifically limited claims to "aluminum," the specification's disclosure that "other metals" could be used did not expand claim scope because disclosed scope was unclaimed).

## CONCLUSION

For the reasons stated herein, the Court grants Rosback's motion for summary judgment of non-infringement (Dkt. No. 35) and denies Tech-ni-Fold's motion for partial summary judgment of infringement (Dkt. No. 28).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/29/2015